Filed 7/15/13  P. v. Inscore CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TARA PAIGE INSCORE,<br><br>    Defendant and Appellant. | D062644<br><br><br><br>(Super. Ct. No. SCE321377) |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed as modified.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Tara Paige Inscore entered into a plea agreement that included two years of local custody followed by two years of mandatory supervision. She objects to one of the conditions of her supervision, namely that she obtain her probation officer's approval as to her choice of residence. Inscore argues the condition is overly broad and thus violates her constitutional right to travel and freedom of association.[1] We agree that the condition is not tailored narrowly enough to protect Inscore's constitutional rights and strike it from the order. She further contends that imposing a booking fee under Government Code section 29550.1 without a finding that she has the ability to pay is error under equal protection principles. Inscore, however, forfeited any challenge to the booking fee by not making it at the sentencing hearing. We affirm the order as modified.

FACTS

In April 2012 Inscore had an altercation with another woman in a parking lot. Inscore abandoned the car she was driving and fled the scene on foot before police officers arrived. Officers discovered the car was stolen and found drug paraphernalia inside. Inscore was later identified because she had left her cell phone at the scene. On July 23, 2012, Inscore pleaded guilty to the unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd.(a)) and admitted two prison prior convictions within the meaning of Penal Code sections 667.5, subdivision (b) and 668. As a part of the plea agreement, remaining counts and allegations were dismissed. In an interview on

---

[1]     A substantially similar issue is currently before the California Supreme Court. (*People v. Schaeffer* (2012) 208 Cal.App.4th 1, review granted October 31, 2012, S205260.)

August 6, 2012, Inscore admitted she was using methamphetamine about every day at the time of the offense and that it likely affected her judgment.

On August 22, 2012, the court imposed the agreed-upon split sentence of two years of local custody, followed by two years of mandatory supervision.[2] In addition, the court ordered an $800 restitution fine, $1,512.24 in restitution to the victim,[3] a $154 criminal justice administration fee (booking fee), a $40 court operations assessment, and a $30 criminal conviction assessment. Inscore indicated that she had an opportunity to review, with her counsel, all of the terms of the mandatory supervision. She told the court that she understood them and agreed to be bound by them. She made no objections at the sentencing hearing.

DISCUSSION

I

*Choice of Residence*

In April 2011 the Governor signed the Criminal Justice Realignment Act (Realignment), which, among other things, drastically changed the sentencing options available to trial courts. (Stats. 2011, ch. 15, § 1.) Realignment allows the courts to sentence defendants convicted of certain felonies, including the crimes Inscore committed, to serve their time in county jail rather than state prison. (Pen. Code, § 1170, subd. (h).) The Legislature intended to foster community-based corrections programs

---

[2]     The court found Inscore was not a suitable candidate for probation.

[3]     Inscore stipulated to the amount of victim restitution.

3

and facilitate felons' reintegration into society. (Pen. Code, § 17.5, subd. (a)(3)-(5).) Realignment gives courts the discretion to split a defendant's sentence so that part will be served under the mandatory supervision of a probation officer rather than in the county jail. (Pen. Code, § 1170, subd. (h)(5).) As noted *ante*, Inscore received such a sentence.

While mandatory supervision is not the same as probation, the applicable code section provides, "defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation." (Pen. Code, § 1170, subd. (h)(5)(B)(i).) Thus, we look to established law on probation conditions to address Inscore's challenge.

A defendant's constitutional challenge to his or her probation condition is not forfeited despite his or her failure to object at the time the condition was imposed. (*In re Sheena K.* (2007) 40 Cal.4th 875, 879.) We review constitutional challenges to probation conditions de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) A probation condition is invalid if it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*People v. Olguin* (2008) 45 Cal.4th 375, 379, quoting *People v. Lent* (1975) 15 Cal.3d 481, 486.) All three parts of this test must be satisfied before a reviewing court will invalidate a condition of probation. (*Olguin*, *supra*, at p. 379.)

The first two prongs are easily met: nothing in the record indicates Inscore's residence was related to her crime; and choosing a residence is not in itself criminal conduct. As to the third prong, the People assert oversight of Inscore's residence will

4

help rehabilitate her by ensuring she is not living in a place frequented by drug users. There is evidence in the record that Inscore struggles with drug abuse and it adversely affects her judgment. Any connection, however, between her choice of residence and her potential for future criminality is too attenuated to pass constitutional muster.

When a probation condition imposes limitations on a person's constitutional rights, it must be closely tailored to avoid being invalidated as unconstitutionally overbroad. (*People v. Olguin*, *supra*, 45 Cal.4th at p. 384, quoting *In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) A condition that Inscore not knowingly associate with people who are using or selling narcotics would have been a much more narrowly tailored condition to affect the People's proffered purpose. We also note that the "ORDER GRANTING MANDATORY SUPERVISION" form lists the residence condition in the section titled "VIOLENCE AND SEX CONDITIONS," which does not apply here. While the probation officer presumably would not act capriciously, that alone does not permit the court to unnecessarily limit Inscore's rights. We conclude the condition requiring Inscore to obtain her probation officer's approval as to her residence was overly broad, and we strike the condition from the order.

II

*Booking Fee*

It is now settled law that "a defendant who fails to contest the booking fee when the court imposes it forfeits the right to challenge it on appeal." (*People v. McCullough* (2013) 56 Cal.4th 589, 591.) Inscore contends that at the time of her sentencing her attorney had no reason to object because *McCullough* had not yet been decided. At that

5

time, however, there were opinions holding an objection was required. (See, e.g., *People v. Hodges* (1999) 70 Cal.App.4th 1348, 1357 [forfeiture doctrine applicable] and cases cited therein.) As our Supreme Court has held, "all 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for the first time on appeal are not subject to review." (*People v. Smith* (2001) 24 Cal.4th 849, 852, citing *People v. Scott* (1994) 9 Cal.4th 331, 353.) This forfeiture rule exists "to reduce the number of errors committed in the first instance" (*Scott*, at p. 353), and " 'the number of costly appeals brought on that basis.' " (*Smith*, *supra*, at p. 852, quoting *People v. Welch* (1993) 5 Cal.4th 228, 235.) Inscore was represented at sentencing, stipulated to victim restitution almost 10 times higher than the booking fee, and made no objections to fees. We conclude this discretionary sentencing choice is therefore not subject to review on appeal.

## DISPOSITION

The trial court is directed to modify the judgment granting mandatory supervision so that condition 7g is stricken. In all other respects, the order is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.

6